Ms. Castillo, are you going to argue or have I got it wrong? Once again, I'm looking at my list here and I don't know who's whom. Yes, Your Honor, I think as normal and normal custom and required, I'm the attorney admitted, but there's two student attorneys that are arguing today. And so I'd like to introduce those attorneys, the student attorneys, to the court today. Again, my name is Elizabeth Holmes and it's my pleasure to introduce Eder Castillo and Michelle Gonzalez, both are third-year law students at the University of St. Thomas Law School, and they will be presenting oral arguments today on behalf of the petitioner. All right. Thank you. How is the time divided? Your Honor, it's divided 10 and five. 10 for the opening, five for the rebuttal. Mr. Castillo will begin. Okay. Okay? All right. I apparently missed my notes, so I'm sorry about that. Mr. Castillo, see if I can get anything else wrong. We'll try and be gentle, though. I can't talk for him, though. He's a little bit tougher. I appreciate it, Your Honor. May it please the court. Eder Castillo on behalf of Mr. Luis Prieto-Pineda. The Board of Immigration Appeals cut corners on a worthy case by violating its charge as an appellate tribunal and merging three distinct forms of relief. Mr. Luis Prieto-Pineda fled El Salvador when the Mara 18 gang persecuted him for not transporting them. While petitioner was in the country, his wife was raped, impregnated, and murdered. This court should remand Mr. Prieto-Pineda's case because the Board committed two legal errors. First, the Board used petitioner's failure under withholding to preclude his cat claim in an unprecedented manner. And second, the Board failed to review the immigration judge's only ground for denying asylum. To find otherwise would merge three textually distinct forms of relief into one. In regard to the Convention Against Torture, on page eight of the record in footnote three, the Board stated that failing to prove inability precludes a finding of acquiescence. That preclusive effect is not supported by case law. Acquiescence has two simple elements. The first is whether a public official had a duty to prevent torture and an awareness that it would occur. And second, that that public official would neglect that duty. Nowhere within the acquiescence elements will a finding of inability be found. And that's because it isn't relevant. Under this court's case law, acquiescence and inability are distinct. Under Ramirez-Beto v. Gonzalez, out of this court, evidence of inability is insufficient to prove acquiescence. However, that's not petitioner's argument today. Petitioner is not arguing that the evidence of El Salvador's inability to control gangs, he's not putting that evidence forward to prove acquiescence. There's more than inability here. There's evidence of systemic corruption and gang infiltration at the local government level where petitioner is from. So under Ramirez-Beto v. Gonzalez and this court's precedent, evidence of willful blindness, which doesn't speak at all to ability or inability, is sufficient to show acquiescence. The government in their brief cited two cases to support the board's methodology in this case. They cited Garcia v. Holder and Rivas v. Sessions out of this court. Now, it's notable that in each of those, inability did not have a preclusive effect. Rather, the court actually engaged in an analysis of acquiescence and the evidence that could lend proof to acquiescence. Counsel, I think the government's going to argue that he wasn't able to meet the more lenient standards, so we don't need to worry about the more stringent standard. Your Honor, inability is not, is a less stringent standard in the sense that it's easier to prove. However, whether that has a preclusive effect or whether there can be evidence that doesn't show inability but shows acquiescence, that's the case here today. And there is record evidence here that even though- The one is not necessarily encompassed by the other. Right, Your Honor. And I think one key distinction in each of the elements is that inability looks at the country at large. And it asks whether El Salvador, as a whole, can control gangs, has a semblance of control, regardless of how bad the gang problem is. Acquiescence, however, looks at a public official and can look more specifically at the geographic region from which petitioner comes from. Here, there is evidence of systematic corruption and gang infiltration. On pages 95 and 96 of the record, the immigration judge found that gangs have infiltrated many organizations and branches of the Salvadoran government. On page 685 of the record, the UN report states that police, judges, and politicians collaborate with gangs, that politicians who investigate gang crimes have their investigations shelved, and that civilians are afraid to report gang crimes because police relay those reports back to the gangs. And going to scope, La Paz, where petitioner is from, is a particularly violent place within El Salvador where a public official, even a well-meaning one, would have more reason to turn a blind eye. On page 86 of the record, the immigration judge found that the Mara 18 gang controlled the town where petitioner lived. On page 693 of the record, the UN report states that La Paz had one of the highest homicide rates in El Salvador when El Salvador had the highest homicide rate in the world. And on page 372 of the record, Dr. McNamara also testified that La Paz was one of the most violent parts of the country. Now I'd like to turn to the one-year bar. On page 86 of the record, the immigration judge denied petitioner's asylum claim on the one-year bar without reaching the merits. Then the immigration judge siloed his withholding determinations within the withholding claim itself. On page five of the record, however, the Board of Immigration Appeals claimed that it did not need to review the immigration judge's only ground for denying asylum. Instead, it did what the immigration judge was not willing to do, and it transferred findings from withholding to asylum. Now there are key differences between both claims of relief. There is, of course, the fact that asylum has a one-year bar and withholding does not. In addition, the level of fear that needs to be proven is different. Within asylum, one only needs to show a well-founded fear, whereas within withholding, one needs to show a clear probability, or more likely than not, that that person will be persecuted. In addition, asylum is an applicant's most beneficial claim. It comes with the most benefits. It comes with a path to citizenship and family benefits. In this case, Petitioner has family in El Salvador, including his wife, or he had his wife who was murdered, but he has children there, and so to not review the most beneficial claim is especially prejudicial. Now the government cites several cases to support it. It cites Matter of A.B. In Matter of A.B., the immigration judge denied a claim on multiple fatal elements, and the board only had to select one of those fatal elements to deny. In this case, there weren't multiple fatal elements that the claim fell on at the IJ level, just one, and the board, as an appellate tribunal, under 8 CFR 1003.1 D1, had a duty to review the question before it, and that question was whether Petitioner met an exception to the one-year bar. It can't be that the question was just the claim itself, because as an appellate tribunal, the question necessarily becomes narrower once a case is appealed, and the legal question here was whether Petitioner met the one-year bar. Under Saldana v. Lynch, out of this court, a claim at the IJ level was denied on alternate grounds, and the board only had to affirm one of those alternate grounds. Here, the claim was denied on one ground, and the board needed to review that because it was a necessary question before it under Bogamisbad. The board stepped into the immigration judge's shoes and did something the immigration judge was not willing to do. The board merged two distinct forms of relief, and Respondent's argument, taken to its logical conclusion, would allow all three claims of relief to be denied on the inability element alone, because that element is common between asylum and withholding, and according to the board, that element can be preclusive of a finding of acquiescence. Congress intended to create three avenues of relief for people who fear persecution in their home countries, and each of those claims of relief deserves a proper review. I reserve the remainder of my time for rebuttal. Thank you. Do you have a question, Your Honor? I apologize. Do you have a question? I think the rules only allow you to reserve six minutes, right? The maximum, Your Honor. Yeah, so, very good. Thank you. No one ever quits with six minutes left, so I don't know what happens. But we're greatly appreciative, actually. Ms. Green. May it please the Court? I'm Susan Green. I represent the Attorney General. And, Your Honors, I'd like to talk about the technical issues that Mr. Prieto's lawyer mentioned, but I'm gonna talk about those last. First, I would like to talk about the merits of the case, because I think it could be helpful to the Court. And Mr. Prieto's claim was based on being a victim of ordinary crime. And, as the Court knows, asylum and withholding are limited to people who were persecuted on account of a protected ground. And those protected grounds are race, religion, nationality, membership in a particular social group or political opinion. Being a desire for free transportation is not one of those protected grounds. This case is about a gang's desire for free transportation, which Mr. Prieto initially was willing, he was initially willing to take them in his boat as long as they were paying. When they quit paying, he was no longer willing. He resisted, and that was when the gang started threatening and hassling him, throwing stones on his roof and so forth. Because this is all about just ordinary crime, Mr. Prieto has tried to craft a particular social group that coincides with the gang's reasons for picking him. And he calls that his particular social group. But that cannot work, and the agency gave three important reasons in this case. And the first one is that asylum and withholding require a motive on the part of the persecutor. And so it's not enough that he can craft a particular social group that coincides with the cause of how he got picked. Instead, he's gonna have to show why he got picked coincides with a protected ground, and that's what he can't show. And this is a very common mechanism that people try to use to come within the coverage of the asylum withholding statute, is to create a particular social group that coincides with how they got chosen, but doesn't address why they got chosen. And the Board of Immigration Appeals has a very helpful case about that, in matter of LEA, that they decided in 2017. And it discusses exactly that situation. What happens when somebody's been able to craft a particular social group that coincides with the facts of how a criminal chose them, but it doesn't really have anything to do with animus against that group. And matter of LEA said, in that case, it was a family particular social group, they said, even if your particular social group has something to do about how this criminal honed on you, that's not the key question. For motive, you have to show that there was some kind of animus against the particular social group. And in a case where there is no evidence of animus against the particular social group, and the only significance of that particular social group to the persecutor is that it's a means to an end of theft, or here, getting free transportation, that doesn't satisfy the motive requirement. And the reason I wanted to talk about that first is because at the time that I briefed this case, matter of LEA was temporarily not precedential because the Attorney General had certified that case to himself for their further decision. And for that reason, when I briefed this case, I didn't really talk about LEA because the board's decision had sort of gone behind a cloud momentarily. But now the Attorney General has decided LEA, and he specifically reaffirmed the board's nexus reasoning in LEA. So LEA is back, I think it should be very helpful to the court in analyzing this case. And this court, before the Attorney General had certified the case, had followed LEA in the DiPino-Rivas decision, so there's Eighth Circuit precedent out there. And not only that, but matter of LEA, the board decision actually relied on Eighth Circuit precedent in deciding that case. So circuit law and LEA are very much in sync, which is why I think it should be very helpful to the court. So how does that apply in Mr. Prieto's case? Well, he said that this gang wanted free transportation, and they came to him because he was the president of this fishing cooperative, and he controlled the boats. So that's how he got picked, but there was no evidence at all that they had any animus against that fishing cooperative. In fact, the evidence would suggest the opposite, that they were probably pleased that this fishing cooperative existed because that way, Mr. Prieto was in a position to do what they wanted him to do. So no animus at all, it was only used as a means to an end. So his, I'm sorry, his particular social group of this fishing cooperative fails on the nexus ground. He raised two other claims for his withholding and his asylum claim, and that is one, he raised his family as a particular social group, and that fails on nexus as well, because there's no evidence that any of the things that the gang did to him, or any of his interactions with the gang when he was in El Salvador had to do with his family as a particular social group. Instead, he brings in the very, very sad events of what happened to his wife three years after he left. But as the agency said, there was no showing of a connection between Mr. Prieto and what happened to his wife. The only evidence about what happened to his wife is from, in the record, shows that people apparently picked on her because she had been cooking for the police and the military in El Salvador, and that was a completely different motive for the harm, has nothing to do with Mr. Prieto. So that group fails on the nexus as well. And then he also raised a political opinion, particular social, or a political opinion claim. And there is absolutely no evidence that would substantiate that nexus to a political opinion, because he never expressed a political opinion, and there's no evidence that the gang thought he had a political opinion. In fact, just the opposite. He was willing to transport them as long as they were paying him. When he quit being willing to transport them is when they quit paying. So to the extent that he had, you know, that his views affected his willingness to cooperate, it wasn't his political opinion, it was his aversion to having to work without pay. So there's no nexus to the political opinion claim either. Aside from nexus, even before you get to that, his particular social group, based on his fishing cooperative, it also failed because it was not a cognizable particular social group, because he did not show one of the elements that you have to show to establish a particular social group. And that is that the group was socially distinct in his society. That requires a showing that the group is set apart from society, that it's treated differently, that it's perhaps viewed as a faction. There's no evidence like that. And so the agency said he didn't show that this was even a protected ground. And so that claim would have failed even before getting to the nexus. The last thing, and Mr. Prieto's lawyer put some emphasis on this, was the agency also found that the evidence did not show that the government was unwilling or unable to protect him. Because the evidence in the particular case is important. And the evidence here was that after he quit being willing to work for the gang and they started hassling him, showing up at his house, he called the police, he said four or five times. Every time he called, the police came. They did what they were supposed to do. And so the agency said he didn't make a showing either that they were unwilling or unable to protect him. Counsel, because time is growing short, I'd like to have you address the failure to consider the exceptions to the one-year bar on asylum claims. Okay, the one-year bar question could not make a difference to the outcome of this case. And that is what the board said. It said if his asylum claim fails on the merits, which it does, it can't make any difference whether that claim is time barred or not. And so just for judicial economy, it simply focused on the merits of the case. It is, as the Supreme Court said in the Baga Mosque bad case, it's a general rule that neither administrative agencies nor courts have to address things that have no bearing on the outcome of the case. And that's the situation here. So it would have been a waste of the agency's time to address an additional question that couldn't make any difference. What about the CAD analysis standards? And there's clearly two distinct standards here, so. Absolutely, and the board was very careful to say there are two distinct standards. But the question, the issue is, is that it's easier to prove  because it can be either that the government is unwilling or unable. Either suffices. In the CAT area, inability is not enough, at least in this circuit, that it's not enough. There's a circuit split, and interestingly, Mr. Prieto's lawyers argued from the other circuits in their brief, but now I guess they've abandoned that. But in this circuit, it's very clear that inability to protect is not the inquiry for CAT. But since it's easier to prove the asylum, the element for asylum, the fact that he did not prove that for asylum or withholding, therefore, proves a fortiori he's not gonna be able to prove the more demanding standard. But is that really true in this instance? It's true that one's more lenient than the other, but does one necessarily encompass all of the other ones? Isn't there a subset, perhaps, that's not overlapped by the two? But, and no, I don't think that that's correct, because I think that the agency looked at the same evidence that would be relevant, and the evidence that they looked at was, they said that they acknowledged the evidence that the country was having a difficult time with these gangs, and they acknowledged evidence on both sides of that. They acknowledged progress that they had made, and all the crackdown that they had made, and that it seemed to be making a difference. But at the same time, they said, under the Eighth Circuit precedent, it's also very relevant what happened in this case. And in this case, there's absolutely no evidence that, of acquiescence, there's no evidence of unwillingness of any government or public official to control the gang members that were picking on Mr. Prieto. When he called, the police came. And then, to the extent that anything having to do with his wife's problem three years later is relevant, the government did exactly what they were supposed to do. They went after the criminals. And this court has made it clear that the relevant inquiry is not just whether a government was able to prevent the crime, but also whether they followed up, did reasonable law enforcement efforts afterwards. And that's what was shown here. As I read the papers, it struck me that you were arguing, or that the government was arguing, categorically, that the lesser claim was sort of subsumed into the greater claim, and that you failed on the one, and you couldn't make the other. And now I'm hearing you say that on the facts, as established in this case, it's not, there's just no world under these facts in which it could happen. Is that more correct? Well, I mean, I don't want to try to say whether it's imaginable that there could be different facts. Well, if you just read the language, it certainly is imaginable that you could have one, that it's not necessary that everything in the lesser standard makes proving the greater. And I don't need to go for that, because that's not what the board did. The board was very careful. They're very meticulous. They said, we recognize that these are different inquiries. I think it's a footnote where they said that. But they went into that, but they said, we're looking at the facts, the relevant findings of fact, and the relevant, the findings of fact that the immigration judge made in this case are the same things that would be relevant to the CAT.  I think it's Najong that I've cited, saying that if you have the relevant findings of fact, if they result from the same facts, the CAT claims and the asylum claims, you can use the findings on one, they're relevant to the other one. And that's what happened here. And what happened here is basically facts are facts, and they're stubborn things, right? So Mr. Prieto's facts are actually the same facts in both cases. Now, Mr. Prieto argues that the facts are somehow different because the standard's different. I mean, he's arguing that the facts are different because inability is not relevant. Well, fine. I mean, that's fine to put inability to the side. But the agency also had to consider whether the government was willing to protect him, and they did. And the facts, the only facts in this case show that they showed up every time that he called them. And then with regard to his wife's killing, that they investigated it, and they arrested the miscreants. So I think that it would be really academic to say that they have to address it somehow separately when the findings that they made were exactly the findings that they would need. We've been known to make people do academic things before. Well, I... Not to... That's fine. You don't need to answer that. That's not really a question. I think that when we call it judicial economy, it becomes more persuasive. And I think that in the interest of judicial economy, there's no reason in making the board go back and dot an I that, obviously, the answer's got to be the same. Thank you. If there are any further questions, I would ask the court to deny the petition. Thank you. Ms. Gonzalez. You may. Thank you. May it please the court, Michelle Gonzalez on behalf of petitioner Luis Amadeo Prieto-Pineda. Your honors, for this rebuttal, I'd like to address some of the issues Respondents' Council addressed, particularly starting with the merits of this case. Respondents' Council states that petitioner requested for three forms of relief, asylum, withholding of removal, and protection under the Convention Against Torture. And with that, they hold different standards. And Respondents' Council addressed that you need a protected ground, but you only need a protected ground for asylum and withholding of removal. And the protected ground that petitioner sought were political opinion and particular social group. And under particular social group, looked for government phishing cooperative and family. So I'd like to first start off with the phishing cooperative. Respondents' Council raises that on the factual findings that the board made in regards to social distinction, the government phishing cooperative that the petitioner was a member of was not socially distinct. However, substantial evidence does not support this finding. There is actually no evidence and certainly no substantial evidence on the record that supports those conclusions. Specifically, for example, because the board does not state them, specifically, for example, on the board in their decision on page six, they discuss or they state that the board found that the gangs might have considered the phishing cooperative as socially distinct group, but because it's use of the cooperative as a means of transportation, but it rejected that the Salvadorian society, specifically the people or the village that the petitioner was a part of, could not see it as a socially distinct for the same reasons. However, if we're looking at the record and the testimony provided by the petitioner, petitionary the contrary can be found. Their village of Zacateco Lucas located on the sea coast and people were regular people, not only the Maraitin gang, the phishing cooperative would pay him to transport them for that. Therefore, no substantial evidence supports that finding. In addition, the- Excuse me, just a minute. Yeah. Is the existence of an economic relationship where people use the organization to move goods, even though they're primarily engaged in another business, which sounds to me what you're arguing, that that's enough to make you socially distinct? It's enough socially distinct if people in the community find that group socially distinct. And so what the board, what in that, in looking at that, the board cites to that finding. However, they do not, they do not cite to any evidence suggesting that just because the Maraitin gang finds it socially distinct doesn't mean that regular society wouldn't have. And the example that I provided is that socially economic, being located on the sea coast and having this being a government phishing cooperative and having the ability to transport people does make it socially distinct because the people in the community know who they can go to to ask for rides because they are on the sea coast, not necessarily their transportation is not only necessarily included just for land use, it could be on the sea coast. In addition, if I could move on, Respondents Council raises the issues of factual findings made by the board in regards to family not meeting the nexus requirement in that. And again, substantial evidence does not support the board decision because the board did not address future persecution to the petitioner. If we're looking at the record again, his wife was repeatedly threatened and even after he had left, they had seen her walking around the street and she would get threatened. In addition to that, she was raped, impregnated and murdered based off of the testimony. If I could move on to the, Respondents Council addressed political opinion in terms of not meeting or not being persecuted based on being in Tangang. However, again, substantial evidence does not support that finding that the board made. In addition, if we're looking at the immigration judge's decision, they'd cite from this court, Murakin Ochoma versus Holder. And in that case, this court decides that mere refusal of not compelling is not enough to find political opinion. However, if we're looking at the record and what the expert provided, refusal, it wasn't just mere refusal, it was not transporting the gang to, not transporting the gang, not requiring or not deciding to be part of the gang. In addition, the expert looks at, there was reporting, there was distributing of votes. So, substantial evidence does not support the board's decision. Overall, Your Honor, if we're looking at the merits, the board's decision is entirely legally flawed and it's flawed not because of the merits, it's because it's flawed because the board uses the immigration decision of withholding of removal to apply it to asylum. And that is the significant error in this case. Because the board fails to understand that these are two different forms of relief that are not interchangeable. And the immigration judge clearly did not find them interchangeable and decided to preclude petitioner's asylum claim because of that. However, because there are differences, there are different textually, there are different in the harm of, there are different in the harm because lower, it is lower in the asylum. But even more, it's significant because the board failed to provide a ruling on the threshold issue of asylum. And if I may. You may. And the Respondent's Counsel states that it can't preclude additional claims such as the cat claim. Although the board states in their, in their decision on page six on footnote, it's inability to establish former precludes him from being to able to establish the latter. Therefore, it's clear that the board failed to distinguish the forms of relief  did not, did not conflate the issues. And the tragedy endured by Luis Amadeo Preto-Pineda was compounded by that failure by the immigration judge and the board to provide a reasoned decision supported by substantial evidence and free of significant legal errors. So we ask this court to reverse the decision of the lower court or in the alternative, remand this case to the Board of Immigration Appeals. To find otherwise, your honors, would jeopardize asylum claims by merging three textually distinct forms of relief. Thank you. Thank you. I want to thank you all for your time here today.